UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Life Share Collateral Holdings, LLC,

    Plaintiff,

v.

Charles Hood,                                    Civil No. 11-3637 (JNE/JSM)
                                                       ORDER

    Defendant,

v.

Wells Fargo Bank, N.A.,

    Third-Party Defendant.

---

Adam M. Simon, The Simon Law Firm, and Thomas H. Schaefer, Erstad & Riemer, P.A., appeared for Plaintiff Life Share Collateral Holdings, LLC.

Jeffrey C. Brown, Sapientia Law Group, appeared for Defendant Charles Hood.

---

      An insurer issued a life insurance policy on the life of Charles Hood to a trust that Hood had established. The trust, Hood, and a lender entered into an agreement to provide financing for the payment of premiums for the policy. After the policy had lapsed due to nonpayment of premiums, the lender's successor, Life Share Collateral Holdings, LLC (LSCH), brought this action against Hood to enforce a personal guarantee. Hood asserted counterclaims for fraud and conversion, as well as third-party claims against the trust's trustee, Wells Fargo Bank, N.A., for breach of fiduciary duty and violation of Minn. Stat. § 325D.44 (2012). Wells Fargo Bank asserted counterclaims for declaratory relief. The Court previously granted summary judgment in favor of Wells Fargo Bank on Hood's

1

claims against it. The case is before the Court on Hood's Motion for Summary Judgment. Hood moved for summary judgment on LSCH's claim against him, as well as his fraud counterclaim.[1] For the reasons set forth below, the Court denies Hood's motion.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court must view genuinely disputed facts in the light most favorable to the nonmovant, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009), and draw all justifiable inferences from the evidence in the nonmovant's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[1] Hood also sought the dismissal without prejudice of his conversion counterclaim: "The documents produced in this case do not seem to support Charles Hood's claim of conversion. Therefore, Charles Hood is willing to abandon and dismiss this claim without prejudice." LSCH acknowledged Hood's abandonment of the conversion counterclaim: "Now that Hood has abandoned count II of his counterclaims for conversion, Hood has one remaining counterclaim . . . ." The Court dismisses Hood's conversion counterclaim without prejudice.

*Borrower*

Hood first argued that summary judgment is appropriate because he is not the borrower on the note. Instead, he argued that the trust is the borrower. LSCH responded that its "claims against Hood arise out of his default on a personal guaranty [he] made of obligations under the . . . loan taken by Hood Trust as Borrower." At the motion hearing, LSCH stated that it is not attempting to hold Hood liable as the borrower for the entire amount of the loan. Hood's argument that he is not the borrower on the note does not render summary judgment in his favor appropriate because LSCH's claim against him is one for breach of a personal guarantee.

*Fraud*

Next, Hood argued that the personal guarantee was secured by fraud. He began his argument by essentially copying the allegations he had made in support of his fraud counterclaim:

> When Charles Hood executed the aforementioned Loan and Security Agreement, he relied on Life Share Financial, LLC's representations and warranties and "Commitment" to pay the premiums on the insurance policy using the full amount of the $941,083 loan to keep the policy in force. As a direct, proximate, and attributable result of Life Share's deceit, Charles Hood has been damaged by the lapse of the Lincoln policy and Life Share's demand that Charles Hood pay the insurance policy premiums to keep the policy in force beyond the two-year incontestability period.

The personal guarantee that LSCH seeks to enforce here is not the same as the loan and security agreement to which Hood referred. Moreover, Hood's interpretation of the loan and security agreement is not supported by the agreement's terms. Subject to certain

conditions, the lender agreed to make loans up to a certain amount to pay the policy premiums. It did not unconditionally commit to pay the premiums.

Hood also argued that he did not execute the personal guarantee that LSCH seeks to enforce here. According to Hood, he signed a personal guarantee in early December 2008 in connection with an application for a life insurance policy that never issued. He asserted that the signature page of the December 2008 guarantee was affixed to a January 2009 guarantee, which is the basis of LSCH's claim against him. Although Hood stated that he only signed an application, loan documents, and guarantee associated with a policy to be issued by Phoenix Variable Life Insurance Company, there is evidence that he knew of the "change in carrier," that he signed the loan and security agreement associated with the Lincoln policy, and that he signed associated loan documents. Viewing the record in the light most favorable to LSCH, the Court denies Hood's motion for summary judgment insofar as he asserts the personal guarantee that LSCH seeks to enforce here was procured by fraud.

*Enforce the guarantee*

Next, Hood maintained that LSCH "has not shown it has standing to enforce the personal guaranty." There is evidence in the record that the original lender, Life Share Financial, LLC, assigned its interest in the loan and security agreement and associated documents to Gesher LLC. There is also evidence in the record that Gesher assigned its interest in the loan and security agreement and associated documents to LSCH. Viewing the record in the light most favorable to LSCH, the Court concludes that LSCH may enforce the personal guarantee.

4

*Stranger originated life insurance*

Hood maintained that he may not be held liable on the personal guarantee because there was no insurable interest in the Lincoln policy when it issued. "An insurable interest is an interest in the continued life of the insured, based on a familial or economic relationship." *PHL Variable Ins. Co. v. Bank of Utah*, Civil No. 12-1256, 2013 WL 6190345, at *8 (D. Minn. Nov. 27, 2013). Minnesota law provides that "a life insurance policy 'issued to one who has no interest in the continuation of the life of the person insured, is both a gambling contract, and a contract which creates a motive for desiring the termination of such life, and is therefore against public policy and void.'" *Id.* (quoting *Christenson v. Madson*, 149 N.W. 288, 289 (Minn. 1914)). In general, "once a life insurance policy has been validly procured, it may be assigned to a third party that does not have an insurable interest." *Id.* But "[i]f a life insurance policy was 'procured under a scheme, purpose, or agreement to transfer or assign the policy to a person without an insurable interest in order to evade the law against wagering contracts,' it violates public policy and is void ab initio." *Id.* (quoting *Sun Life Assurance Co. of Canada v. Paulson*, Civil No. 07-3877, 2008 WL 451054, at *2 (D. Minn. Feb. 15, 2008)). To determine whether such a scheme, purpose, or agreement exists, a court looks "to the 'mutual intent of the insured and the third party' at the time the policy was procured. If, at that time, the insured and a third party mutually intended to avoid the prohibition on wagering contracts, the policy lacks an insurable interest and is void ab initio." *Id.* at *10 (citation omitted) (quoting *Sun Life*, 2008 WL 451054, at *2). A court may consider several factors in determining whether an insured and a third party mutually intended to

5

evade the law against wagering contracts, such as "an insured's inability to afford premiums and lack of realistic options to retain the policy; the absence of an insured's personal desire to obtain life insurance; whether the insured was offered incentives such as 'quick cash' or 'free' insurance; and the length of time the insured held the policy before transferring it." *Id.* at *11.

Here, Hood argued that there was no insurable interest when the Lincoln policy issued because the policy's beneficiary was the trust, the trust's beneficiary is Hood's spouse, and Hood's spouse had assigned her interest in the policy to LSCH's predecessor. The document on which Hood relied to demonstrate his spouse had assigned her interests to LSCH's predecessor states that his spouse's interests in the policy "have been, or will be, assigned to [LSCH's predecessor], pursuant to the terms of the Loan Agreement and the Collateral Assignment of Life Insurance Policy." Under the loan and security agreement, the policy's death benefits are applied first to satisfy the loan obligations. The remainder is paid to the trust, whose beneficiary is Hood's spouse. Under the collateral assignment, the policy was assigned to secure the premium financing for the policy. Viewing the record in the light most favorable to LSCH, the Court denies Hood's motion for summary judgment insofar as he asserted that the Lincoln policy was procured without an insurable interest.[2]

---

[2] According to Hood, "the parties did very little discovery outside the various agreements and documents. Charles Hood believed his case could by proved on the documents and focused his efforts accordingly." He asserted that the document record in this case is essentially the same as that of another case in which the Court refused to allow LSCH to recover on a personal guarantee. The Court vacated the case on which

6

*In pari delicto, consumer fraud, and attorney fees*

Hood asserted that he is not at equal fault with LSCH, that LSCH violated Minnesota's consumer fraud laws, and that he should recover his attorney fees. The Court expresses no opinion on these issues. At the motion hearing, Hood acknowledged that he had not pleaded any of the alleged violations of Minnesota's consumer fraud laws.

*Conclusion*

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Hood's Motion for Summary Judgment [Docket No. 54] is DENIED.

2. Hood's conversion counterclaim is DISMISSED WITHOUT PREJUDICE.

Dated: May 6, 2014

s/Joan N. Ericksen<br>JOAN N. ERICKSEN<br>United States District Judge

---

Hood relied. His arguments to date do not establish that the policy is void ab initio. *Cf. PHL Variable Ins.*, 2013 WL 6190345, at *11-13.